# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>The subject is Joseph Manuel Florez IV, date of birth 03/08/1973, who is currently in the custody of the United States Marshals Service and is being housed at the Federal Correctional Institution, 9595 West Quincy Avenue, Englewood, Colorado. | Case No. 25-sw-01491-SBP |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the State and District of Colorado, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 922(g)(1), | Felon in Possession of a Firearm and Ammunition |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Christopher Pyler*
*Applicant's signature*

TFO Christopher Pyler, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 28, 2025

*Judge's signature*

Susan Prose
United States Magistrate Judge
*Printed name and title*

City and state: Denver, CO

# ATTACHMENT A

## **DESCRIPTION OF LOCATION TO BE SEARCHED**

The subject is Joseph Manuel Florez IV, date of birth 03/08/1973, who is currently in the custody of the United State Marshals Service and is being housed at the Federal Correctional Institution, 9595 West Quincy Avenue, Englewood, Colorado.

Case No. 1:25-sw-01049-SBP *SEALED* Document 10/28/25 10/28/26 USDC Colorado pg 3 of 13

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

1. A DNA sample via buccal swabs from Joseph Manuel Florez IV, date of birth 03/08/1973.

Case No. 1:25-sw-01049-SBP *SEALED* Document 10/28/25 10/28/26 USDC Colorado pg 3 of 13

**AFFIDAVIT**

I, Christopher Pyler, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

**INTRODUCTION AND AGENT BACKROUND**

1.      Your affiant, Detective Christopher Pyler, hereby informs the Court that he is a commissioned peace officer with the Westminster, Colorado Police Department, and has been assigned as a federal task force officer with the FBI Denver Rocky Mountain Safe Streets Task Force ("RMSSTF") since January 2015. Your affiant is responsible for investigating violent crimes in the Denver metropolitan area, including bank and business robberies, kidnappings, carjackings, and weapons violations. Your affiant has been a police officer in Colorado for more than thirty years and has training and experience in the investigation of property crimes, financial crimes, and violent crimes. The information contained in this affidavit is based upon information compiled from personal involvement, witness/victim interviews, fellow law enforcement officers, informants and by reading official police reports.

2.      This affidavit is submitted in support of an application for a search warrant for the person described in Attachment A (hereinafter "Subject,"), there being probable cause to believe that located on the person described in Attachment A are items described in Attachment B, those items being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, 922(g)(1), Felon in Possession of Firearms and Ammunition.

3.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Your affiant set forth facts your affiant believes are necessary to establish probable

1

cause to believe that evidence, fruits, and instrumentalities of a violations of 18 U.S.C.§§ 922(g)(1), Felon in Possession of Firearms and Ammunition, are presently located on the Subject.

## INVESTIGATION

1. Your affiant was investigating reports that JOSEPH MANUEL FLOREZ IV, date of birth 03/08/1973, was possessing firearms and ammunition. FLOREZ has at least two felony convictions, which would make him ineligible under federal law, to possess either. Both Colorado felony convictions were for conspiracy to commit aggravated robbery, and both were in Arapahoe County, Colorado. The first was in 2003 (docket 2003CR836), and FLOREZ was sentenced to four years in the Colorado Department of Corrections for that conviction. The second was in 2007 (2007CR2505) and FLOREZ was sentenced to ten years in the Colorado Department of Corrections for that conviction.

2. Your affiant was advised on July 30, 2025, of concerns held by the Adams County Human Services Department (ACHSD) regarding FLOREZ and threats he had made against them related to their involvement in removing his children from him and the termination of his parental rights. ACHSD reported FLOREZ had been attending scheduled, supervised, visits with his children at the ACHSD facility at 11860 Pecos Street, Westminster, Colorado, for several years. During that time, there had been several instances in which FLOREZ had violated facility rules, and at least one condition for his visits was his person and property were to be searched for any items which were prohibited in the facility. In one instance, FLOREZ brought a knife into the facility for his visitation with his children (who are 6 and 8 years old). In another incident, property he was bringing into the facility, including gifts for his children, was searched and suspected marijuana was found in the packaging for a toy robot.

3. During a visit which occurred on December 12, 2024, items which FLOREZ was bringing into the facility for visitation were searched. The initial contact in the lobby of the building was captured on bodycam. An Adams County deputy (who was off duty but working security at the facility) searched a bag and located a box of what appeared to be live ammunition (an item prohibited in the facility). The box was labeled as ammunition and a Westminster Police officer who was also present, S. Porta, later told your affiant he believed the box to contain live ammunition based on its appearance and labeling and its weight. FLOREZ took the box of ammunition and tried to take the bag, but the deputy retained it and asked if there was a firearm in the bag. FLOREZ replied, "maybe." Officer Porta searched the bag and did not locate a firearm in it. FLOREZ showed Officer Porta the ammunition and opened the box, stating it was "home defense", revealing what appeared to be live ammunition. The box was labeled "USA Ready Defense" and your affiant noted USA Ready Defense is a brand of ammunition manufactured by Winchester (outside the State of Colorado) and the box and ammunition were consistent with on-line advertisements your affiant located on-line (photos below).

| Bodycam Footage | Actual Product |
|---|---|
|  |  |

4. FLOREZ took the ammunition out to his vehicle in the parking lot and returned and told the officers he had a customer's M&P Shield (a firearm manufactured by Smith and Wesson outside the State of Colorado) he was cleaning. Officer Porta mistakenly believed FLOREZ could possess ammunition when he returned it to FLOREZ.

3

5. Your affiant spoke with Brighton Police Sgt. T. Quayle. Quayle said Brighton Police had been notified by the Rocky Mountain Pawn shop at 875 East Bridge Street, Brighton, Colorado, on March 9, 2025, that FLOREZ was attempting to purchase .40 caliber ammunition. The sale was refused, and FLOREZ became upset. Your affiant spoke to the manager, J.S. (a person over 21 years of age), who refused the sale to FLOREZ. He explained he knew FLOREZ personally because FLOREZ had bought and sold items in the store on prior occasions. On March 9, 2025, FLOREZ came into the store and asked if they had .40 caliber ammunition. J.S. put a box of Smith and Wesson .40 caliber ammunition (which they keep behind the counter) on the counter but did not remember if FLOREZ actually touched it.

J.S. was uncomfortable with the sale and contacted Sgt. Quayle by phone, asking if he knew FLOREZ and if FLOREZ was able to purchase ammunition. J.S. said FLOREZ had never purchased a firearm from their store although he spent time looking at them when he came into the store, so J.S. had never run a background check on him. Quayle told him FLOREZ was a felon and not legally allowed to purchase ammunition. J.S. said they told FLOREZ he was "flagged" by the system and could not purchase ammunition because he was a felon. J.S. said FLOREZ became angry and "in the middle of the store" told J.S. they were violating his rights, that he had the right to purchase ammunition and guns and told them he owned guns including fully automatic guns. FLOREZ said he believed FLOREZ may have purchased ammunition from them in the past ("years ago") and had purchased magazines for two firearms, a Ruger 10-22 rifle and a High Point carbine, approximately 1.5 years ago. J.S. said FLOREZ still came into the store and bought and sold items to them and looked at firearms, but had not tried to make purchases of firearms, ammunition, or accessories since March 2025.

6. Sgt. Quayle told your affiant about another report of FLOREZ possessing firearms. On July 29, 2025, employees of a "Rent A Center" store delivered a refrigerator to 827 South 3rd Avenue. The tenant at the residence was identified as Joe FLOREZ. The employees, E.E.S. and D.M. (both persons over the age of 21), reported they arrived at 827 South 3rd Avenue at about 4:45 p.m. to deliver a refrigerator and waited until about 5:30 p.m. to deliver it. The two were inside the residence and reported it was messy, so they assisted FLOREZ with cleaning a path in order to bring the refrigerator inside. Inside the front door in the living room, E.E.S. reported he could clearly see a shotgun sitting on the couch. He described the buttstock as brown and the barrel as black and said he "could fit a quarter through the barrel." E.E.S. did not touch the firearm but believed it to be real. D.M. said he was also helping clear a path and moved a black tactical vest out of the way. He reported the vest contained 2-3 AR rifle magazines, a fixed blade knife, and what he described as "an explosive device" in pockets on the vest. D.M. said the device had a pin inserted with a circle object connected to the pin. D.M. said he did not know if the device was a gas canister or a grenade. D.M. said the vest was heavy when he moved it and that the magazines and canister pockets were covered with a flap, and he did not know whether the magazines were loaded with ammunition. The two also noted what they described as an AR mounted on the wall in the kitchen. E.E.S. said he bumped into the rifle and FLOREZ moved it away. He believed it was a 3D printed replica of an AR style rifle and clarified that the replica was only a portion of the weapon and did not have a trigger on it.

7. While they were working their manager called and advised them they were taking too long and needed to take the refrigerator and leave. FLOREZ argued with their manager on the phone and was becoming upset. E.E.S. said FLOREZ was becoming increasingly angry and was pacing near the shotgun. The two became nervous about what was happening and elected to leave

5

the refrigerator and leave the residence. FLOREZ maneuvered the refrigerator into the residence himself and the two left the area. Their manager contacted Brighton Police after arguing with FLOREZ by phone and requested a welfare check on the two to ensure they were safe.

8. During the subsequent investigation, your affiant spoke with Adams County Sheriff's Deputy Dustin Naylor. Deputy Naylor resides next door to 827 South 3rd Avenue and is familiar with FLOREZ. He reported FLOREZ lived in the residence with his wife Rachel, and there is another subject, named Dominic who sometimes lived there as well. Naylor said he believed there was a protection order prohibiting FLOREZ from contact with his wife, and your affiant confirmed there was a permanent protection order issued out of Arapahoe County (CO) on August 7, 2020, which prohibited contact between the two except incidental contact for court or Department of Human Services matters. It also prohibited him from possessing or purchasing firearms.

9. Deputy Naylor told your affiant he had received information from a subject he arrested on May 14, 2024, regarding FLOREZ. G.S. (a person over 21 years of age) told Deputy Naylor he knew FLOREZ was Deputy Naylor's neighbor and said FLOREZ had "a lot" of firearms and was stocking up on ammunition and food supplies. He told Deputy Naylor he had seen an "AK-47" style rifle. G.S. also said FLOREZ told him if he did not get his children back "it's gonna be war." Deputy Naylor, who knew FLOREZ had supervised visits at the Adams County facility on Pecos Street, asked G.S. if the building was going to be a target for FLOREZ and G.S. replied "one of them." G.S. did not know of any other specific targets.

10. Your affiant searched local records and noted FLOREZ had provided the address of 827 South 3rd Avenue as his on numerous occasions. Commercial databases revealed Joseph FLOREZ used the address for a number of accounts, and Adams County (CO) property records

6

show "Joseph Manuel FLOREZ IV" (which is Joseph FLOREZ's legal name) as the property owner.

11. On July 31, 2025, your affiant applied for and was granted a Federal search warrant for the residence at 827 South 3rd Avenue, Brighton, Colorado, to search for firearms and ammunition. Based on the circumstances of the investigation and FLOREZ's criminal history, a decision was made to serve the search warrant with a tactical team, and to serve it when FLOREZ was not at the residence. Brighton (CO) Police advised they had probable cause to arrest FLOREZ for violating a state protection order related to his contact with his wife, Rachel Lauderbaugh, which was prohibited by the order. On July 31, 2025, investigators conducted surveillance on the residence anticipating FLOREZ would leave and could be contacted and arrested and the search warrant served. FLOREZ did not leave the residence, and in consideration of the time constraints of the search warrant, investigators left and resumed surveillance the morning of August 1, 2025. At about 12:39 p.m., FLOREZ left the residence and was followed to a nearby store where he was contacted and arrested. At the time of his arrest, FLOREZ told your affiant he did not want to talk to your affiant.

12. The search warrant was served by the tactical team, and Rachel Lauderbaugh exited the residence and said no one else was inside the residence. Your affiant asked her about weapons, and she told your affiant all of the guns in the house were hers. She told your affiant about several safes in the home including two in the basement she had keys and access to, and a third in an upstairs bedroom that she did not know the combination to, but that FLOREZ did. Once the residence was secured, your affiant and other investigators conducted the search authorized by the search warrant. In the living room, a loaded shotgun was located (with additional shells nearby), as was additional ammunition, some in boxes and some loaded into magazines. The

7

tactical vest described by E.E.S. and D.M. was located as well, but no explosive device of any sort was located. The AR noted by the two was determined to be an airsoft replica firearm. Numerous high-capacity firearm magazines loaded with ammunition were located in the living room as well.

13. While at the residence, your affiant was advised FLOREZ did wish to speak with your affiant. Your affiant went to the Brighton Police Department where FLOREZ was being processed, and after advising FLOREZ of his Miranda rights and obtaining a signed waiver, your affiant discussed the investigation and some of the initial findings with him. FLOREZ told your affiant he did not own any firearms and said his wife Rachel owned the firearms. He did not know where the firearms were kept, and when your affiant asked about the firearms in plain view in the living room, he denied seeing them. FLOREZ said he had a traumatic brain injury, and his memory was poor. He denied handling firearms but admitted to purchasing ammunition for people as gifts. He was aware he was a convicted felon and could not possess firearms but said the 2nd Amendment allowed him to purchase ammunition. He admitted purchasing ammunition in the past, and said he remembered trying to purchase ammunition in March 2025, at Rocky Mountain Pawn in Brighton. FLOREZ told your affiant that two safes in the basement belonged to Lauderbaugh, and that a locked closet upstairs on the main level was his and he had the key, but he sometimes gave the key to Lauderbaugh and that she was able to put items in the closet, but did not know if the items included firearms. FLOREZ said the safe in the bedroom had his collectibles inside it, but that he had forgotten the combination to the safe.

14. A search of the two safes in the basement revealed one of the safes contained two large boxes which contained numerous smaller boxes of ammunition. In the bottom of the safe were several checks with FLOREZ's name on them. In the locked closet upstairs where FLOREZ said he stored collectibles and to which he had the only key, a loaded .45 caliber handgun was

8

located in a soft case with additional magazines and ammunition. The safe in the bedroom to which FLOREZ had forgotten the combination was opened by the fire department using hand tools. Inside the safe, two rifles, one an AR variant rifle, and the second a rifle with a scope mounted on it, were located. The AR rifle had a selector switch with a "full auto" position, but it did not appear that the weapon could be fired in a fully automatic fashion. Also located in the safe were numerous boxes of various calibers of ammunition, many of which were the calibers of the firearms located during the search. In addition to the three firearms located in the closet and the bedroom safe, four additional firearms (the shotgun, two rifles, and a handgun) were located in the residence. All of the weapons appeared to be fully functioning firearms, and your affiant knows from his training and experience that none of the firearms recovered were manufactured in the State of Colorado. The total amount of ammunition located in the residence was more than 1,000 rounds, and your affiant knows from his training and experience that none of the ammunition was manufactured in the State of Colorado.

15. The firearms collected during the search were processed for DNA evidence (swabbed) and the DNA swabs were submitted to the Federal Bureau of Investigation (FBI) Laboratory for analysis. On October 22, 2025, your affiant was notified by the FBI Laboratory they had analyzed the swabs, and male DNA was obtained from five of the firearms, and unknown sex DNA was obtained from the sixth firearm. All of the DNA collected was suitable for comparison purposes.

16. A DNA sample collected from FLOREZ is necessary to continue the investigation. It will be compared to evidence collected and analyzed to confirm any involvement FLOREZ has with the commission of the violation with which he has been charged.

17. Namely, based on my training and experience, your affiant knows that individuals who touch or handle physical objects, including firearms, often leave trace amounts of biological material on those objects containing DNA. Your affiant knows that laboratory testing of that biological material can provide DNA evidence that can be compared to other DNA samples to identify the source of the biological material. Your affiant knows that for such comparison, it is possible to obtain a buccal swab of the inside of an individual's cheek in order to obtain DNA samples for testing.

18. Based on the investigation described above, probable cause exists to believe that on the person described in Attachment A, will be found evidence, fruits, and instrumentalities of violations of 18 U.S.C.§§ 922(g)(1), Felon in Possession of a Firearm and Ammunition.

19. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

20. Your affiant declares under penalty of perjury that the foregoing is true and correct to the best of his information, knowledge, and belief.

*s/Christopher Pyler*
Detective Chris Pyler, Task Force Officer, RMSSTF

SUBSCRIBED and SWORN before me this 28th day of October, 2025

HON. SUSAN PROSE
UNITED STATES MAGISTRATE JUDGE

**Application for search warrant reviewed and submitted by Thomas Minser, Assistant United States Attorney.**

10